UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

THOMAS GESUALDI, LOUIS BISIGNANO,　　　　 :
ANTHONY D'AQUILA, MICHAEL O'TOOLE,　　　 :
MICHAEL C. BOURGAL, JOSEPH A.　　　　　　 :
FERRARA, SR., FRANK H. FINKEL, MARC　　　 :　　Civil Action No.:  15-CV-3407
HERBST, DENISE RICHARDSON, and　　　　　　 :
THOMAS F. CORBETT, as Trustees and　　　　　:
Fiduciaries of the Local 282 Welfare Trust Fund,　:
the Local 282 Pension Trust Fund, the Local 282　 :
Annuity Trust Fund, and the Local 282 Job Training　:
Trust Fund,　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　Plaintiffs,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　 - against -　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　 :
QUADROZZI EQUIPMENT LEASING CORP.,　　　 :
AMSTEL RECYCLING AND CONCRETE CORP.,　　:
QUAD ACQUISITION CORP., QUALITY　　　　　 :
ASSURANCE CONCRETE CORP., QUADROZZI　　 :
REALTY CORPORATION, QUALITY CONCRETE　 :
OF NEW YORK INC., RED HOOK CONCRETE　　　:
LOADING CORP., QUEENS CONCRETE　　　　　 :
DELIVERY & LEASING CORP., HARLEM　　　　 :
CONCRETE LOADING CORP., MASPETH　　　　　:
CONCRETE LOADING CORP., MANHATTAN　　　 :
WEST CONCRETE LOADING CORP.,　　　　　　 :
EDGEWATER CONCRETE LOADING CORP.,　　　 :
MASPETH TRUCK DEPOT CORP., GOWANUS　　　:
INDUSTRIAL PARK, INC., QUADROZZI　　　　　:
ENTERPRISES, THERESA QUADROZZI,　　　　　:
individually, and PATRICK QUADROZZI,
individually,

　　　　　　　　　　　Defendants.

-------------------------------------------------------------------x

## **<u>COMPLAINT</u>**

　　　　　Plaintiffs Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise

Richardson, Thomas F. Corbett, Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael

O'Toole, and Michael C. Bourgal, and as Trustees and fiduciaries of the Local 282 Welfare Trust

Fund, the Local 282 Pension Trust Fund (the "Pension Fund"), the Local 282 Annuity Trust

00391537.5

Fund, and the Local 282 Job Training Trust Fund, (collectively, the "Funds"), for their complaint allege as follows:

## INTRODUCTION

1.      This is an action brought under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA").

2.      This is an action to collect (1) approximately $130,000 in unpaid contributions due from Quadrozzi Equipment Leasing Corp. ("Equipment") pursuant to (a) an audit of its books and records and audits of the books and records of its affiliate/alter ego, Amstel Recycling and Concrete Corp. ("Amstel"), and (b) remittance reports from Equipment, (2) approximately $4 million in withdrawal liability due from Equipment, Amstel, and the entities under common control with Equipment, and (3) statutory interest, liquidated damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to Sections 502(e)(1), 502(f), and 4301(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1451 (c), and 28 U.S.C. § 1331.

4.      Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as the Fund is administered in this district.

## THE PARTIES

5.      Plaintiffs are the Trustees and fiduciaries of the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) (the "Trustees").

6.      The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

7.      The Pension Fund is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), that is subject to the withdrawal liability provisions of ERISA.

8.      The Funds' principal place of business is at 2500 Marcus Avenue, Lake Success, New York 11042.

9.      The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 186(c)(5).

10.      The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union") and providing benefits to eligible participants.

11.      The collective bargaining agreements and the Trust Agreement set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Funds and that the Funds are beneficiaries of the collective bargaining and Trust Agreement terms.  Accordingly, the Trustees have legal right to bring suit on behalf of the Funds and their participants and beneficiaries under Sections 502, 515, and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1145, and 1451(a)(1).

12.     Upon information and belief, Equipment is, and at all times relevant to this action has been, a New York corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY.  On or about October 26, 2011, Equipment became an inactive New York business corporation by dissolution by proclamation/annulment of authority.

13.     Equipment is, and at all times relevant to this action has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and the Trust Agreement.

14.     Upon information and belief, Theresa Quadrozzi has owned 75% of the shares of stock of Equipment since before October 2011.

15.     Upon information and belief, Patrick Quadrozzi has owned 25% of the shares of stock of Equipment since before October 2011.

16.     Upon information and belief, Amstel is, and at all times relevant to this action has been, a New York corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

17.     Amstel is, and at all times relevant to this action has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and the Trust Agreement.

18.     Upon information and belief, Theresa Quadrozzi has owned 50% of the shares of stock of Amstel, Catherine Quadrozzi has owned 25% of the shares of stock of Amstel, and Patrick Quadrozzi has owned 25% of the shares of stock of Amstel since before October 2011.

19.     Upon information and belief, Quad Acquisition Corp. ("Quad") is, and at all times relevant to this action has been, a Delaware corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

20.     Upon information and belief, Quality Assurance Concrete Corp. ("Assurance") is, and at all times relevant to this action has been, a New York corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

21.     Upon information and belief, Quadrozzi Realty Corporation. ("Realty") is, and at all times relevant to this action has been, a New York corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.  On or about January 25, 2012, Realty became an inactive New York business corporation by dissolution by proclamation/annulment of authority.

22.     Upon information and belief, Queens Concrete Delivery & Leasing Corp. ("Queens") is, and at all times relevant to this action has been, a Delaware corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

23.     Upon information and belief, Quality Concrete of New York, Inc. ("Quality") is, and at all times relevant to this action has been, a New York corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

24.     Upon information and belief, Red Hook Concrete Loading Corp. ("Red Hook") is, and at all times relevant to this action has been, a Delaware corporation which maintains its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

25.     Upon information and belief, Theresa Quadrozzi has owned 75% of the shares of stock of each of Quad, Assurance, Realty, Queens, Quality, and Red Hook ("Subgroup 1") since before October 2011.

26.     Upon information and belief, Patrick Quadrozzi has owned 25% of the shares of stock of each entity in Subgroup 1 since before October 2011.

27.     Upon information and belief, Harlem Concrete Loading Corp. ("Harlem") is a Delaware corporation with its principal place of business at 72-03 Amstel Boulevard, Arverne, NY 11692

28.     Upon information and belief, Maspeth Concrete Loading Corp. ("Maspeth") is a Delaware corporation with its principal place of business at 691 Columbia Street, Brooklyn, NY 11231.

29.     Upon information and belief, Manhattan West Concrete Loading Corp. ("Manhattan") is a Delaware corporation with its principal place of business at 72-03 Amstel Boulevard, Arverne, NY 11692.  On or about July 14, 2010, Manhattan became an inactive New York business corporation by dissolution by proclamation /annulment of authority.

30.     Upon information and belief, Edgewater Concrete Loading Corp. ("Edgewater") is a Delaware corporation with its principal place of business at 72-03 Amstel Boulevard, Arverne, NY 11692.

31.     Upon information and belief, Maspeth Truck Depot Corp. ("Truck") is a Delaware corporation with its principal place of business at 72-03 Amstel Boulevard, Arverne, NY 11692

32.     Upon information and belief, Gowanus Industrial Park, Inc. ("Gowanus") is a Delaware corporation with its principal place of business at 699 Columbia Street, Brooklyn, NY 11231.

33.     Upon information and belief, Theresa Quadrozzi has owned 75% of the shares of stock of Harlem, Maspeth, Manhattan, Edgewater, Truck, and Gowanus ("Subgroup 2") since before October 2011.

34.     By interlocutory judgment dated June 23, 2010 (the "2010 Judgment"), the Supreme Court of the State of New York, Queens County, awarded Patrick Quadrozzi a constructive trust to the extent of a 25% interest in each entity in Subgroup 2.  The 2010 Judgment was upheld on appeal by the Supreme Court of the State of New York, Appellate Division, Second Department, in an opinion dated October 3, 2012.

35.     As a result of the 2010 Judgment, Patrick Quadrozzi has owned 25% of the total value of shares of each entity in Subgroup 2 since before October 2011.

36.     Upon information and belief, Quadrozzi Enterprises ("Enterprises") is a partnership with its principal place of business at 100 Hilton Ave, Garden City, NY.

37.     Upon information, and belief, the Estate of John Quadrozzi, Sr. has been a partner with a 65% interest in Enterprises since before October 2011.

38.     Theresa Quadrozzi is the sole residuary beneficiary of the Estate of John Quadrozzi, Sr.

39.     Theresa Quadrozzi is the sole beneficiary of any income or principal from the testamentary trust established by the Will of John Quadrozzi, Sr., and the trustee of the testamentary trust has discretion to pay both principal and interest to Theresa Quadrozzi.

40.     Upon information and belief, Patrick Quadrozzi has been a partner with a 35% interest in Enterprises since before October 2011.

## FACTUAL ALLEGATIONS

Equipment's Relationship with the Union

41.     Equipment was signatory to a series of collective bargaining agreements with Building Material Teamsters Local 282 ("Local 282" or the "Union") for decades.  Those collective bargaining agreements established the terms and conditions of Local 282-represented employees and included a requirement that QEL pay contributions to the Funds.

The 1997 Action

42.     On April 1, 1997, the Funds filed *LaBarbara, et al., v. Quadrozzi Equipment Leasing Corp., et al.,* Case No.: CV-97-1546 (TCP) (E.D.N.Y.) (the "1997 Action") against Amstel, Equipment, Quadrozzi Concrete Corp. ("QCC"), John Quadrozzi, Sr., and Patrick Quadrozzi (the "Prior Defendants").

43.     On September 15, 1998 the Funds filed an amended complaint in the 1997 Action (Docket #47) (the "1998 Complaint") that alleged that Amstel had been used to produce ready-mix concrete and/or deliver concrete and other building materials.

44.     The 1998 Complaint alleged that Amstel was an alter ego of and/or single employer with Equipment.

45.     The 1998 Complaint alleged that Amstel had been used by Equipment to avoid obligations under collective bargaining agreements with the Union (the "Prior CBAs").

46.     The 1998 Complaint also alleged that employees on the payroll of Amstel performed work covered by the Prior CBAs and that contributions had not been paid to the Funds on account of such work.

47.     Pursuant to a Stipulation of Settlement (the "Stipulation") entered on November 21, 2001 in the 1997 Action (Docket #90), Amstel agreed to the entry of a permanent injunction prohibiting it from engaging in the delivery of ready-mix concrete on or after August 10, 2001.

48.     Pursuant to the Stipulation, the Prior Defendants agreed to entry of a permanent injunction prohibiting John Quadrozzi, Sr. from creating, participating in or funding any future non-Local 282 operations that engage in the delivery of ready-mix concrete.

49.     On November 21, 2001 (Docket #92), the Court in the 1997 Action entered the agreed-upon injunction.

The 2011 Action

50.     On January 7, 2011, the Funds filed *Gesualdi, et al., v. Quadrozzi Equipment Leasing, et al.,* Case No: 11-cv-00115 (RJD) (E.D.N.Y.) (the "2011 Action").  The complaint in the 2011 Action (Docket #1) alleged that employees on the payroll of Amstel performed work covered by the CBAs, and that Equipment and Amstel were alter egos and/or a single employer, and were jointly and severally liable for the amounts claimed.

51.     On December 12, 2012, the Court in the 2011 Action (Docket #23) entered a default judgment against Equipment and Amstel in the amount of $1,503,659.56, based, in large part, on contributions due to the Funds for work Equipment employees performed for Amstel.  An appeal of the Court's denial of Equipment and Amstel's motion to vacate the default judgment is pending before the United States Court of Appeals for the Second Circuit, Case No. 13-3018.

The Collective Bargaining Agreement, the Trust
Agreement and the Obligation To Contribute to the Funds

52.     Equipment was bound to the Association of New York City Concrete Producers, Inc. and Independents contract with the "Union for the period from July 1, 2005 through June 30, 2008 (the "2005 CBA"), for the period from July 1, 2008 through June 30, 2011 (the "2008 CBA"), and for the period from July 1, 2011 through October, 2011 (the "2011 CBA", and, with the 2005 and 2008 CBAs, the "CBAs")).

53.     At all times relevant to this action, the CBAs required Equipment to make contributions to the Funds on behalf of its employees who are covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs.

54.     Along with the contributions, Equipment was also required to submit remittance reports to the Funds.  The remittance reports provide Equipment's statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment.

55.     The CBAs provide that Equipment was bound to the Trust Agreement.

56.     The Trust Agreement provides that if an Employer fails to remit contributions by the date due, the Employer is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

The Trust Agreement and the Obligation to Permit Audits

57.     The Trust Agreement requires an Employer to submit to periodic audits. Specifically, the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds.

58.     The Trust Agreement defines "pertinent books and records" to include but not be limited to:

> (a)     Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;
>
> (b)     Payroll tax records submitted to federal and state governments, including Forms 941, W-2;
>
> (c)     Complete business income tax returns;
>
> (d)     Cash disbursements records;

(e)     General ledgers;

(f)     Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

(g)     Any other records specifically requested by the Funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

59.     The Trust Agreement additionally provides that pertinent books and records of an Employer include:

> the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes the Employer.

60.     Amstel is, and at all times relevant to this action has been, affiliated with Equipment, and has employed persons who have performed the same type of work as the employees of Equipment covered by the CBAs.

61.     The Trust Agreement requires an Employer to submit to audit in order to verify that all contributions required under the CBAs have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds, and that covered employees are receiving the required benefits and/or credits.

62.     The Trust Agreement provides that an Employer determined to owe contributions by an audit is required to pay, in addition to the contributions due, interest, liquidated damages, attorney's fees, audit fees, filing fees, and costs.

63.     Pursuant the Trust Agreement, as amended, interest is calculated at the rate of 1-1/2 percent per month (18% per year).

The Relationship between Equipment and Amstel

64.     As set forth in paragraphs 14, 15, and 18, both Equipment and Amstel are owned by members of the Quadrozzi family, including Theresa Quadrozzi, Patrick Quadrozzi, and Catherine Quadrozzi.

65.     At all times relevant to this complaint, Equipment and Amstel shared a common business purpose.

66.     At all times relevant to this complaint, employees of Equipment and Amstel performed work covered by the CBAs.

67.     At all times relevant to this complaint, Equipment and Amstel both employed workers who were members of Local 282 who performed driving work.

68.     At all times relevant to this complaint, John Quadrozzi, Jr. was the President of both Equipment and Amstel.

69.     At all times relevant to this complaint, Catherine Quadrozzi was the Secretary and Treasurer of both Equipment and Amstel.

70.     At all times relevant to this complaint, Catherine Quadrozzi and/or John Quadrozzi, Jr. controlled labor relations for both Amstel and Quadrozzi.

71.     At all times relevant to this complaint, both Equipment and Amstel were involved in similar businesses, including the Ready-Mix Concrete business.

72.     Theresa Quadrozzi is the mother of John Quadrozzi, Jr. and Catherine Quadrozzi.

73.     Equipment and Amstel share an alter ego, single employer/or joint employer relationship and, therefore, work performed by individuals employed by Equipment

and Amstel was work performed in employment covered by and subject to the terms of the CBAs.

Unpaid Contributions

74.     Equipment has failed to contribute to the Funds contributions that are owing.

75.     Through various correspondence, the Funds requested that Equipment pay the delinquent contributions.

76.     To date, Equipment has failed to pay contributions owing for the months of June 2010, July 2010, August 2010, February 2011, and June 2011.

Amounts Due on Contributions Paid Late

77.     Equipment paid contributions late for the period of May 2011.

78.     The Trust Agreement provides that the failure to promptly remit contributions due constitutes a violation of the CBA and Trust Agreement.  Article IX, Section 3 of the Trust Agreement further provides that in such instance, Equipment is obligated to remit interest, liquidated damages, attorney's fees and costs.

79.     The Funds requested payment from Equipment of interest due on the late contributions.

80.     To date, Equipment has failed to pay the interest, liquidated damages, attorney's fees and costs due on the late contributions.

The Audits

Audit #10-0474

81.     Following an examination of Equipment's books and records for the period from August 26, 2007 through May 23, 2009, the Trustees' auditor issued an audit report reflecting that Equipment owes $8,713.70 in contributions.

82.     By letter dated January 13, 2012, the Funds requested payment of Equipment's audited deficiency for the period from August 26, 2007 through May 23, 2009.

83.     To date, Equipment has failed to remit payment of the audited deficiency for the period from August 26, 2007 through May 23, 2009.

Audit #11-209

84.     Following an examination of Amstel's books and records for the period from August 26, 2007 through May 23, 2009, the Trustees' auditor issued an audit report reflecting that Equipment owes $121,396.15 in contributions.

85.     By letter dated January 13, 2012, the Funds requested payment of Amstel's audited deficiency for the period from August 26, 2007 through May 23, 2009.

86.     To date, Equipment has failed to remit payment of Amstel's audited deficiency for the period from August 26, 2007 through May 23, 2009.

Audit #13-0174

87.     Following an examination of Equipment's books and records for the period from May 24, 2009 through December 25, 2011, the Trustees' auditor issued an audit report reflecting that Equipment owes $7,506.58 in contributions.

88.     By letter dated January 13, 2012, the Funds requested payment of the audited deficiency for the period from May 24, 2009 through December 25, 2011.

89.     To date, Equipment has failed to remit payment of the audited deficiency for the period from May 24, 2009 through December 25, 2011.

The Dishonored Check

90.     Equipment submitted a check for payment of contributions due to the Funds for May 2011. The check was returned to the Funds by the bank for insufficient funds.

91.     The Trustees have authorized the Funds to assess an administrative fee for each contribution check not honored by the bank.

92.     The Funds requested payment from Equipment in the amount of the dishonored checks, plus an administrative fee.

93.     To date, Equipment replaced the check, but has failed to pay the administrative fee.

Equipment's Withdrawal from the Pension Fund

94.     In or around October 2011, Equipment permanently ceased all covered operations under the Pension Fund and therefore permanently ceased to have an obligation to contribute to the Pension Fund, thereby withdrawing from the Pension Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a) (the "Date of Withdrawal").

95.     As a result of Equipment's complete withdrawal from the Pension Fund, Equipment became liable to the Pension Fund for a withdrawal liability in the amount of $3,980,426.00 pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

96.     After determining the amount of withdrawal liability incurred by Equipment, the Pension Fund notified Equipment by letter dated May 3, 2013 of the amount of withdrawal liability and of the schedule for withdrawal liability payments and demanded payment in accordance with the schedule (the "Notice and Demand"), as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).

97.     Pursuant to Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), and as provided in the Notice and Demand, Equipment was required to make 90 monthly withdrawal liability payments of $55,484.32, with a final payment in the amount of $21,022.53.  The first such monthly payment was due on or before July 1, 2013.

98.     On or about August 6, 2013, the Pension Fund notified Equipment that it had failed to make the first withdrawal liability payment when due and that, if such default was not cured within sixty (60) days, Equipment would be in default, within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5) (the "Notice of Default").

99.     On September 10, 2014, the Pension Fund again notified Equipment of the amount of withdrawal liability and the schedule for withdrawal liability payments by handing a copy of the Notice and Demand to Equipment's counsel, Joseph Paykin.  John Quadrozzi, Jr. and Catherine Quadrozzi were present when the Notice and Demand was handed to Joseph Paykin.

100.    Equipment has failed to make any withdrawal liability payments.

The Controlled Group

101.    Section 4001(b)(1) of ERISA provides in relevant part that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."  29 U.S.C. § 1301(b)(1).

102.    In determining whether entities are considered to be under "common control," ERISA and the regulations promulgated thereunder use the definition of "trades or businesses under common control" found in the Internal Revenue Code.  29 U.S.C. § 1301(b)(1); 29 C.F.R. § 4001.3(a)(1).

103.    Under regulations issued under the Internal Revenue Code, a "brother-sister group of trades or businesses under common control" is one of the types of "trades or businesses under common control".  26 C.F.R. 1.414(c)-(2)(a).  Two or more organizations constitute a "brother-sister group of trades or businesses under common control" if (i) the same five or fewer individuals own a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.  26 C.F.R. 1.414(c)-(2)(c).

104.    A "controlling interest" in an organization includes, in the case of a sole proprietorship, ownership of such sole proprietorship, and in the case of a corporation or partnership, ownership of at least 80 percent of the total value of shares of all classes of stock of the corporation or at least 80 percent of the profits interests or capital interests of the partnership. 26 C.F.R. 1.414(c)-2(b)(2)(i)

105.    "Effective control" of an organization includes, in the case of a sole proprietorship, ownership of the sole proprietorship by one person, and in the case of a corporation or partnership, ownership of at least 50 percent of the total value of shares of all classes of stock of the corporation or at least 50 percent of the profits interests or capital interests of the partnership.  26 C.F.R. 1.414(c)-(2)(c)(2)(i).

106.    Based on the controlling interests held by Theresa and Patrick Quadrozzi, each of Enterprises, the entities in Subgroup 1, and the entities in Subgroup 2 (with Enterprises and Subgroup 1, the "Controlled Group") were trades or businesses under common control with Equipment on the Date of Withdrawal.

107.    No member of the Controlled Group has made any payment of withdrawal liability, requested review of the withdrawal liability assessment, or initiated arbitration of the withdrawal liability assessment.

## FIRST CAUSE OF ACTION

108.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-107 above.

109.    By reason of its failure to make withdrawal liability payments within sixty (60) days of receipt of the Notice of Default, Equipment is in default within the meaning of ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), and the Pension Fund is entitled to immediate payment of the total amount of the withdrawal liability referenced in paragraph 95 above, plus accrued interest at the rate of eighteen percent (18%) per annum from the due date of the first payment until payment is made, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), and the Trust Agreement.

110.    Because they were trades or businesses under common control with Equipment on the Date of Withdrawal, the members of the Controlled Group are jointly and severally liable with Equipment for the liabilities set forth in the preceding paragraph.

## SECOND CAUSE OF ACTION  -- INDIVIDUAL LIABILITY

111.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-110 above.

112.    The partners of Enterprises are personally liable for Enterprises' obligations established under the First Cause of Action pursuant to New York Partnership Law Section 26.

113.     As a partner in Enterprises, Patrick Quadrozzi is jointly and severally liable under the First Cause of Action.

114.     Upon information and belief, Theresa Quadrozzi is a partner in Enterprises either individually or in her capacity as the executrix of the Estate of John Quadrozzi, Sr. and is jointly and severally liable under the First Cause of Action

### THIRD CAUSE OF ACTION — ERISA

115.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1–114 above.

116.     Section 515 of ERISA, 29 U.S.C. §1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

117.     Equipment's failure to pay contributions interest, liquidated damages, administrative fees, and attorney's fees and costs owing to the Funds violates the CBA and the Trust Agreement which is incorporated into the CBA, and thus gives rise to an action under ERISA Section 515.

118.     Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [Section 515] in which a judgment in favor of the plan is awarded, the court shall award the plan,
> the unpaid contributions,
> (a)     interest on the unpaid contributions,
> (b)     an amount equal to the greater of
> (i)     interest on the unpaid contributions or;
> (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions],

      (c)      reasonable attorney's fees and costs of the action, to be paid by the defendant, and

      (d)      such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan….

119.    The Funds are thus entitled under ERISA Section 502(g)(2) to unpaid contributions, interest, liquidated damages, attorney's fees and costs.

## FOURTH CAUSE OF ACTION — LMRA

120.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1–119 above

121.    Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

122.    By failing to pay the contributions and other amounts owing, Equipment has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

123.    The Funds are thus entitled under LMRA Section 301(a) to the unpaid contributions, interest, liquidated damages, attorney's fees and costs.

## FIFTH CAUSE OF ACTION – AMSTEL'S LIABILITY

124.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1–123 above

125.    Amstel is jointly and severally liable with Equipment for any amounts due to the Funds and attendant damages under Sections 502, 515, and 4301(b) of ERISA, 29 U.S.C. §§ 1132, 1145, and based on its alter ego, single employer/or joint employer relationship with Equipment.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court enter judgment against the

Defendants as follows:

1. Declaring that the members of the Controlled Group were trades or

businesses under common control on the Date of Withdrawal;

2. Ordering the Defendants to identify all trades or businesses under common

control with Equipment;

3. Ordering the Defendants to pay the Fund the sum of $3,980,426.00 for

withdrawal liability pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C.

§§ 1132(g)(2)(A), and 1451(b);

4. Ordering the Defendants to pay the Fund interest on the withdrawal

liability at the rate of eighteen percent per annum pursuant to ERISA Sections 502(g)(2)(B), and

4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b), and the Trust Agreement;

5. Ordering the Defendants to pay the Fund an amount equal to the greater of

(a) interest at the rate of eighteen percent (18%) per year on the withdrawal liability, or (b) an

amount not to exceed twenty percent (20%) of the withdrawal liability pursuant to ERISA

Sections 502(g)(2)(C) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(C), and 1451(b), and the Trust

Agreement;

6. Declaring Equipment and Amstel to be alter egos, joint employers, and/or

a single employer.

7. Ordering Equipment and Amstel to pay (i) any delinquencies identified by

the audits, (ii) interest on the contributions at the rate of 18% per year from the first day of the

month when the payment was due through the date of payment, (iii) an amount equal to the

greater of (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the cost of the audits;

8.     Ordering Equipment and Amstel to pay to the Funds (i) all delinquent contributions owed; (ii) interest on all delinquent and late-paid contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment; and (iii) an amount of liquidated damages equal to the greater of (a) interest on the delinquent and late-paid contributions or (b) 20 percent of the delinquent contributions;

9.     Ordering the Defendants to pay the Fund the reasonable attorneys' fees and costs of this action pursuant to ERISA Sections 502(g)(2)(D) and 4301(b), 29 U.S.C. §§1132(g)(2)(D) and 1451(b), and the Trust Agreement; and

10.     Granting such other and further relief as the Court deems appropriate.

Dated:  New York, New York
             June 11, 2015

By:  */s/ Tzvi N Mackson*
        Tzvi N. Mackson
        COHEN, WEISS AND SIMON LLP
        330 West 42nd Street
        New York, New York  10036
        (212) 356-0211

        Attorneys for Plaintiffs